Mary E. Plumley, Administratrix, Defendant in Error, v. County of Whiteside et al., Plaintiffs in Error.

## Gen. No. 5457.

1. ROADS AND BRIDGES—*when bridges should be erected without county aid.* If bridges are required over natural watercourses and the cost thereof exceeds a certain amount, county aid is appropriate, but county aid is not appropriate if such bridges are sought to be erected over mere drainage ditches.

2. ROADS AND BRIDGES—*when county aid cannot be required.* If highway commissioners provide for the building over a natural watercourse of a longer and larger bridge than is necessary so as to require the county to pay one-half of the cost thereof, equity will interfere by injunction.

3. LACHES—*when not defense to injunction restraining performance by county of ultra vires contract.* Held, that laches was no defense to an action which sought to restrain county authorities from performing an *ultra vires* contract.

4. CITIES, VILLAGES AND TOWNS—*when town meeting illegal.* Town meetings held outside of the town are illegal even though those holding the same go into the town for the purpose of adopting the proceedings had.

5. COUNTIES—*what not equivalent of action by county board.* Action taken by the chairman of the county board and a committee appointed by such chairman while the board was not in session is not the equivalent of action by the county board.

6. LOCAL IMPROVEMENTS—*when contract illegally let.* Where the time for the awarding of a contract pursuant to bids received is postponed a contract cannot be legally let to a bidder whose bid was received during the period of such postponement.

Bill in chancery. Error to the Circuit Court of Whiteside county; the Hon. EMERY C. GRAVES, Judge, presiding. Heard in this court at the April term, 1911. Affirmed. Opinion filed October 13, 1911.

C. L. & C. E. SHELDON, for plaintiffs in error.

HENRY C. WARD, for defendant in error.

MR. JUSTICE WILLIS delivered the opinion of the court.

On September 24, 1909, John G. Plumley, a taxpayer and citizen of the town of Hume, in Whiteside county, filed his original bill in chancery against the county of Whiteside, in which he sought to have certain contracts for the building of seven bridges in the town of Hume declared *ultra vires* and void and to enjoin the county from furnishing county aid therefor. On November 8, 1909, a demurrer having been sustained to the original bill, the complainant filed an amended bill, in which he prayed for the same relief and made the town of Hume, the commissioners of highways of the town of Hume and Reeder & Gales, a firm of contractors, co-defendants with the county of Whiteside. The evidence was taken and reported by the master in chancery and, upon a hearing in the circuit court, a decree was entered in favor of the complainant, from which the defendants below sued out a writ of error to this court. After the entry of the decree, John G. Plumley, the complainant, died, and his administratrix with the will annexed was made the complainant.

Some time prior to May, 1909, two drainage districts, Nos. 1 and 3, were organized in the town of Hume, in Whiteside county, and ditches were constructed in each district, in the digging of which certain bridges were removed. On May 15, 1909, the commissioners of highways of the town of Hume held a meeting, at which it was resolved that it was necessary to construct seven bridges over certain designated streams in said town, although said commissioners of

highways had not been called upon by the commissioners of the drainage districts to rebuild said bridges as required by law. The highway commissioners at this meeting also determined that the cost of these bridges would be more than twenty cents on the $100 on the latest assessment roll; that the tax levy for road and bridge purposes for the two years last past was in each year for the full amount allowed by law, that is forty cents on each $100, the major part of which was needed for the ordinary repair of roads and bridges; and that it was therefore necessary to call upon the county board for aid, under the provisions of the statute. The highway commissioners thereupon petitioned the county board to appropriate a sum sufficient to defray one half of the cost of said bridges, and arranged for a special town meeting to vote on the proposition of borrowing sufficient funds to meet the other half of the cost of said bridges. Such special town meeting was held and voted in the affirmative on the proposition of borrowing the required sum. Some months later, the county board not being in session, the chairman of said board acted upon the petitions of the highway commissioners to the extent of appointing a committee of three members of the board to represent the county. This committee met with the commissioners of highways, and plans and specifications for each of said seven bridges were adopted and bids for the erection of the same were asked for, to be submitted on August 14, 1909. On that date no bids were received, and the committee extended the time for presenting bids until August 24th, though no further advertisement for bids was made. On the date last mentioned, bids were received and considered and all bids rejected except that of Fred L. Reeder, which was accepted as the bid of Fred L. Reeder and Mike Gales. It is the acceptance of this bid which complainant below sought to have declared null and void, alleging, as reasons therefor, that the streams over which it was sought to erect these

bridges were not natural watercourses, but were the drainage ditches constructed by the drainage districts above mentioned; that the estimated length of each of these bridges was made greater than was necessary, for the purpose of increasing the cost and thereby rendering county aid necessary and proper, under the statute; and that the bid of complainant for the construction of bridge No. 3 was the lowest submitted for the construction of that particular bridge and should not have been rejected; and for other reasons which will appear later in this opinion.

One of the important questions in this case is whether or not the streams over which it was sought to erect these bridges were natural watercourses, in which case the commissioners of highways would have a right to call upon the county board to pay one-half of the expense thereof, provided it exceeded a certain figure, or whether these streams were merely drainage ditches, crossing highways at points where there were no natural watercourses, in which latter case the bridges should be built by the drainage commissioners without county aid. On this question we have examined the evidence carefully and are of the opinion that the preponderance of the evidence clearly shows that bridges 1, 3, 4, 5, and 7, were not over natural watercourses. At bridge No. 1 there was a shallow morass, or marshy place, dry a considerable portion of the time, through which runs a drainage district ditch. There does not appear to be any natural watercourse at this point. Bridge No. 3 was located at what had been called Riddle Lake, but the record shows that for many years there had been no water at all in Riddle Lake and that a portion of the land formerly covered by water is now under cultivation. It appears to be established that at the point where bridge No. 3 is located there is no water except in times of freshets at which times a tile drain would take care of all water coming there. We glean the same general facts

from the record with reference to bridges 4, 5, and 7, that is, that they are not located over natural watercourses. It is true, the evidence is somewhat conflicting in respect to one or two of the bridges, but it appears that the trial judge made an inspection of the sites of these seven bridges, at the request of both counsel, and we find nothing in the record which would justify us in differing from his views in that matter. With regard to bridge No. 7, it appears that the former bridge was but eleven feet long and that the highway commissioners desired to erect one twenty-two feet long, and it is quite clear from the evidence that the principal reason for lengthening this bridge was for the purpose of slightly exceeding the amount of cost, under which county aid could not be obtained. Whether this bridge No. 7 was over a natural watercourse or not, we think it clear that the attempt to construct such a bridge as was proposed was fraudulent. It seems to be conceded that bridge No. 2 has always been located over a small natural watercourse, but defendant in error contends that a two foot tile has always accommodated all the water that naturally flows there and that there was no necessity for the enlargement of the bridge. This contention is borne out by the evidence. We are of opinion that the highway commissioners planned to build bridge No. 2 much longer and larger than there was any need for on account of the existing natural watercourse, this enlargement having the effect to benefit the drainage commissioners, who, under the authority of Highway Comrs. v. Drainage Comrs., 246 Ill. 388, were required to build and pay for this bridge. In our judgment, county aid could not be asked or furnished for the building of bridge No. 2.

Plaintiffs in error contend that complainant below was guilty of such laches in filing his bill and in making the contracting parties defendants thereto as to preclude him from enjoining the county after the con-

tract has been partially performed, and that by his acts and conduct, he is estopped from commencing and prosecuting this proceeding. This contention is based on the facts that Plumley owned land in said drainage district and paid a large amount of drainage tax thereon; that he was instrumental in having the drainage ditch dug and signed the petition therefor; that he signed the petition for a special town meeting to vote on the proposition to borrow for the expense of these new bridges; that he bid for the contract to construct one of these bridges; and that, after his bid had been rejected, he said that if he had received the contract, he would have constructed the bridge, even if he lost money by so doing. Plaintiffs in error cite a number of cases, which we have examined carefully, but we are of opinion that they have no bearing here. We fail to see any reason why the action of Plumley in the respects set out above should preclude him from bringing this action. In our judgment this is an attempt to saddle the expense of these bridges, in part, upon the county, whereas, in truth these bridges, as planned, were either to be constructed over drainage ditches, in which case no county aid could be given under the provisions of the statute, or else the bridges as planned, were made of such dimensions as would obtain county aid, while smaller structures would answer all the requirements. For this general reason we are of opinion that the bill was properly maintained and that the whole contract was properly declared null and void in its inception and entirety, even if some of the minor defects in the proceedings could not have been made available by a taxpayer or could not have been made available because of some delay in instituting the proceedings. We take it that the whole proceeding is utterly void, that the cost of these bridges cannot, even in part, be saddled on the county, and that that fundamental defect in the whole scheme authorized the court in entertaining the bill to enjoin.

There are a number of other defects in the proceedings which we will mention but briefly. Several of the meetings were held illegally. Most of the meetings were held entirely outside of the town; a record and resolutions were prepared, and then the officers went inside the town just long enough to adopt those proceedings. The law requiring such meetings to be held in the town intends that the public shall have a right to be present and know what is going on and what is proposed to be done and have a right to make suggestions and arguments against the proposed action. The petition of the highway commissioners of the town of Hume to the county board for county aid was never presented to nor adopted by the county board itself, but was acted upon by the chairman of the board and a committee appointed by him while the board was not in session. The letting of the contract was illegal. At the time set for presenting bids none were handed in. The committee postponed the letting for ten days and then received and accepted a bid. The law requires that there shall be a re-advertising for bids in such a case, except that the contract may be let without such re-advertising at an amount or rate not exceeding ninety per cent of that of the lowest responsible bid made and rejected at the prior public letting and bidding. Road and Bridge Act of 1883, sec. 27. Here there were no bids presented at the first letting and therefore there could be no letting at ninety per cent of the lowest rejected bid and therefore it was essential that there should be a re-advertisement. Again, the advertisement for bids fixed the amount of the bond to be required of the contractor at $5000 whereas the accepted bid amounted to much more than that sum. The statute requires a bond in double the amount of the accepted bid. The question is also raised as to whether or not the financial condition of the county was such as would render it lawful for the county to enter into this contract and appropriate the sum re-

quired for county aid for the erection of these bridges, but we do not deem it necessary for us to decide that question here, in view of the fact that the county had not entered into this contract by any action of the county board and the further fact that the question of appropriating county aid in the erection of these bridges was voted down by the voters of the county when it was presented to them at an election called for that purpose. Plaintiffs in error urge, as a ground for reversal, that the contract was not in evidence. The contract was set out in the bill and was admitted in the answer and no proof thereof was required.

We find no reversible error in the record and the judgment is therefore affirmed.

*Affirmed.*